UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
Y.S., a minor, by his mother MERNA CHAYA, and
MERNA CHAYA,

                                 Plaintiffs,

              -against-

YESHIVAT OR HATORAH HIGH SCHOOL,

                                 Defendant.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-CV-2249 (SJ) (SMG)

**TOWNES, United States District Judge:**

On May 10, 2011, plaintiff Merna Chaya commenced this action on behalf of herself and her minor son, Y.S., seeking, *inter alia*, a mandatory injunction directing defendant Yeshivat or Hatorah High School (hereinafter, "Defendant" or "Defendant School") to provide a copy of Y.S.'s academic transcript. Plaintiffs now request an order directing Defendant to show cause why a preliminary injunction should not enter requiring Defendant to provide the transcript. Judge Johnson, to whom this case has been assigned, is unavailable to adjudicate plaintiffs' request, so plaintiffs' request was forwarded to the undersigned as the miscellaneous judge. For the reasons set forth below, plaintiffs' request is summarily denied.

## *BACKGROUND*

The following facts are drawn from plaintiffs' complaint and plaintiff Chaya's affidavit in support of the motion for preliminary injunctive relief (the "Chaya Aff."), both of which are assumed to be true for purposes of this Order. Plaintiff Y.S. is currently a high school senior, who hopes to graduate with his class from Abraham Lincoln High School ("Lincoln") on June 24, 2011. Although Y.S. has attended Lincoln, a public school, for the past two academic years, he attended Defendant, a private school, during his freshman and sophomore years.

During the two years that Y.S. attended Defendant School, he, like virtually all other students there, received a scholarship (Complaint at ¶¶ 19, 33). In order to obtain the scholarship, plaintiff Chaya signed annual tuition contracts (Chaya Aff. at ¶ 14). Plaintiffs did not retain a copy of the contracts, and Chaya recalls only that they obligated her family to pay $1,500 per year (*Id.* at ¶¶ 14-15). However, according to plaintiffs, Defendant represents that its annual tuition contracts contain the following clause:

> SCHOLARSHIPS ARE AWARDED FOR A FOUR YEAR PROGRAM. IF YOU TRANSFER YOUR SON TO ANOTHER SCHOOL WITHOUT PRIOR CONSENT OF THE ADMINISTRATION, THE SCHOLARSHIP IS FORFEITED AND FULL TUITION BALANCE IS DUE.
>
> SCHOOL RECORDS OR TRANSCRIPTS WILL NOT BE AVAILABLE UNTIL ALL FINANCIAL OBLIGATIONS ARE MET.

(Complaint at ¶ 31).

While plaintiffs allege that Defendant has been unable or unwilling to produce copies of the signed contracts (*id.* at ¶ 30), plaintiffs do not specifically controvert Defendant's claim that this clause was in the contract. To the contrary, plaintiffs acknowledge in their complaint that the "scholarships" awarded by Defendant were conditioned upon the student attending Defendant School for all four years (*Id.* at ¶ 33). According to plaintiffs, "[i]f a student decides to seek other educational opportunities, the 'scholarship' is . . . voided and all monies that were 'awarded' to that student for past academic years . . . become due" (*Id.*).

Y.S. is classified by the New York City Department of Education as learning disabled (*Id.* at ¶ 20). Although Defendant School does not provide special education services, Y.S. received "related education services during non-school hours through the New York City Department of

2

Education" (*Id.* at ¶ 23). However, Y.S. nonetheless received failing scores on all of the New York State Regents examinations which he took while at Defendant School (*Id.* at ¶ 23). Plaintiffs blames Defendant alone for the failures, alleging, on information and belief, that Defendant School provided only three or fewer hours each day of non-religious instruction (*id.* at ¶ 22),

In the Fall of 2009, Y.S.'s parents transferred him to Lincoln so that Y.S. "could receive appropriate services throughout his school day" and "spend sufficient time studying New York State Regents-based coursework." Chaya Aff. at ¶ 9. Plaintiffs do not allege that they pursued any administrative remedies or even consulted with Defendant before effectuating the transfer. Indeed, plaintiffs imply the contrary by alleging that only "when Defendant learned that Y.S. had transferred," did its staff "strongly urge[] Y.S.'s parents to return him to their school, claiming that Y.S. had 'committed' to attend their school for all four years" (*Id.* at ¶ 26). When Y.S.'s parents refused, Defendant School billed Plaintiffs $23,350, alleging that this money was due under annual tuition contracts.

Plaintiffs never paid this sum, and Defendant took no legal action to collect it. Rather, over the past 18 months, Defendant has consistently either refused, or failed to respond to, repeated requests for the release of Y.S.'s school records or transcripts (Chaya Aff. at ¶ 12). Despite these refusals, plaintiffs took no action until May 10, 2011, when they commenced this action.

In their complaint, plaintiffs allege that this court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Specifically, plaintiffs allege that "Defendant's policy and practice of offering only four-year contracts that apparently contain a severe penalty clause

3

... discriminates against students like Y.S. who have learning impairments" in violation of section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794(a) (Complaint at ¶ 44). Plaintiffs argue 1) that "Defendant does not itself provide an appropriate education to students with learning disabilities, and 2) without transcripts, such students cannot access an education and high school degree elsewhere" (*Id.* at ¶ 45). Plaintiffs allege that "accommodations or modifications" to Defendant's policies are "necessary to avoid discrimination on the basis of a disability" (Id. at ¶ 46). Plaintiffs seek both a declaration that Defendant's policies and practices violate section 504 and an injunction requiring Defendant to modify the policies and practices and to provide Y.S. with a copy of his academic transcripts.

On May 24, 2011 – two weeks after commencing this action – plaintiff moved for preliminary injunction by filing a proposed order to show cause. Judge Johnson, to whom this matter is assigned, is unavailable to provide the expedited relief plaintiffs seek. Accordingly, plaintiffs' application was forwarded to this Court, which was on miscellaneous duty for the weeks beginning May 23 and May 31, 2011, for disposition.

## *DISCUSSION*

"[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990). A party seeking a temporary restraining order or a preliminary injunction must demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004).

"[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979, 984 (2d Cir. 1997)(internal quotations and citations omitted). Indeed, motions for preliminary injunctions are "frequently denied if the affidavits [in support of the motion] are too vague or conclusory to demonstrate a clear right to relief under Rule 65." 11A C.Wright & A. Miller, *Fed. Practice & Proc.*, § 2949 (2004); *see, e.g., McGillicuddy v. Laidlaw, Adams & Peck, Inc.*, No. 88 Civ. 4928, 1995 WL 1081307, at *12, n. 19 (S.D.N.Y. Aug. 14, 1995) (summarily denying an application for preliminary injunctive relief where the movant's papers failed to demonstrate a basis for granting "this extraordinary remedy").

In this case, plaintiffs' papers fail to demonstrate a clear right to injunctive relief because there are substantial questions as to whether this Court has subject-matter jurisdiction over this action. The sole basis for federal question jurisdiction is plaintiffs' section 504 claim, which is predicated on the assertion that plaintiff was not receiving an "appropriate education" during his freshman and sophomore years of high school. During these years, plaintiff was attending classes at Defendant School but also receiving "related educational services" from the New York City Department of Education. Accordingly, the fact that Y.S. failed Regents exams while at Defendant School does not permit the inference that Defendant was solely responsible for the bad results.

Although plaintiffs allege only a violation of section 504, plaintiffs could have pursued administrative remedies under the Individuals with Disabilities in Education Act ("IDEA"). Under this statute, "[p]arents are specifically entitled to request a due process hearing in order to

5

present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" *Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 245 (2d Cir. 2008).

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." *See J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 112 (2d Cir. 2004). However, "[t]he exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA." *Id.* (citing 20 U.S.C. § 1415(l) and *Hope v. Cortines*, 872 F.Supp. 14, 19 (E.D.N.Y.), *aff'd*, 69 F.3d 687 (2d Cir. 1995)). "Exhaustion of administrative remedies is required . . . so that disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances." *Id.* (citing *Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*, 288 F.3d 478, 487 (2d Cir. 2002)).

The Second Circuit has yet to determine whether the exhaustion requirement is jurisdictional or "merely an affirmative defense that must be raised by the defendant or else is subject to waiver or forfeiture." *Levine v. Greece Central Sch. Dist.*, 353 Fed. Appx. 461, 463 (2d Cir. 2009) (summary order); *see also Piazza v. Florida Union Free School Dist.*, ___F.Supp.2d___, 2011 WL 1458100, at *8, n. 7 (S.D.N.Y. Apr. 7, 2011). However, "[w]hether or not the exhaustion requirement is jurisdictional, exhaustion of administrative remedies is a prerequisite to a civil suit unless the plaintiff can allege that an exception should apply." *Levine*, 353 Fed. Appx. at 463. The burden of proving the applicability of one of the exceptions falls on the party seeking to avoid exhaustion. *Murphy v. Arlington Cent. School Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (citing *Polera v. Bd. of Educ.*, 288 F.3d 478, 488 n. 8 (2d Cir. 2002)).

In this case, plaintiffs' complaint does not allege that plaintiffs made any attempt to exhaust administrative remedies before transferring Y.S. to Lincoln. Rather, the complaint suggests that plaintiffs unilaterally determined that Y.S. could no longer receive an appropriate education at Defendant School, even with the after-school services he was receiving. Moreover, plaintiffs have not alleged, much less proved, that there existed any reason to except plaintiffs from the exhaustion requirement.

Even assuming that plaintiffs were not required to exhaust their administrative remedies or could establish that they fit within an exception to that requirement, plaintiffs would have difficulty establishing the section 504 violation which serves as the sole basis for federal jurisdiction. Section 504 provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

In order for a plaintiff to establish a *prima facie* violation of section 504, he must demonstrate (1) that he is a qualified individual with a disability; (2) that the defendant is subject to the Rehabilitation Act; and (3) that he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by defendant, by reason of his disability. *See Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009).

The facts alleged by plaintiffs do not suggest that Defendant has discriminated against plaintiffs by reason of Y.S.'s disability. Defendant's policies have not prevented Y.S. from transferring to Lincoln or obtaining his education there. Rather, Defendant is withholding transcripts in reliance on contracts which require Y.S. – like students who elect to leave the

In this case, plaintiffs' complaint does not allege that plaintiffs made any attempt to exhaust administrative remedies before transferring Y.S. to Lincoln. Rather, the complaint suggests that plaintiffs unilaterally determined that Y.S. could no longer receive an appropriate education at Defendant School, even with the after-school services he was receiving. Moreover, plaintiffs have not alleged, much less proved, that there existed any reason to except plaintiffs from the exhaustion requirement.

Even assuming that plaintiffs were not required to exhaust their administrative remedies or could establish that they fit within an exception to that requirement, plaintiffs would have difficulty establishing the section 504 violation which serves as the sole basis for federal jurisdiction. Section 504 provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

In order for a plaintiff to establish a *prima facie* violation of section 504, he must demonstrate (1) that he is a qualified individual with a disability; (2) that the defendant is subject to the Rehabilitation Act; and (3) that he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by defendant, by reason of his disability. *See Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009).

The facts alleged by plaintiffs do not suggest that Defendant has discriminated against plaintiffs by reason of Y.S.'s disability. Defendant's policies have not prevented Y.S. from transferring to Lincoln or obtaining his education there. Rather, Defendant is withholding transcripts in reliance on contracts which require Y.S. – like students who elect to leave the

school for any other reasons without the administration's consent – to reimburse the school for scholarships. In their section 504 claim, plaintiffs are essentially arguing that they, by reason of Y.S.'s disability, should receive preferential treatment and be permitted to void their contracts and to transfer at will, without the consent of Defendant's administration and without repaying the scholarships. "Plaintiffs cannot use the anti-discrimination provisions of the Rehabilitation Act as a sword, rather than a shield" to place themselves in a better position than they would be absent Y.S.'s disability. *See Smith v. County of Broome*, No. 98-CV-1502, 1999 WL 1270609, at *4 (N.D.N.Y. Dec. 17, 1999).

## *CONCLUSION*

In light of the foregoing, this Court finds that plaintiffs have not established either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in plaintiffs' favor. Accordingly, plaintiffs' application for preliminary injunctive relief is summarily denied. *See MyWebGrocer, LLC*, 375 F.3d at 192. Nothing in this Memorandum and Order should be read as preventing plaintiffs from pursuing their contractual claims or seeking injunctive relief in state court, where they can avoid the jurisdictional issue altogether.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: June 2, 2011
Brooklyn, New York